## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA,
## ATLANTA DIVISION

| | |
|---|---|
| STEPHEN BUSHANSKY, | Civil Action No. |
| Plaintiff, | |
| vs. | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| CATCHMARK TIMBER TRUST, INC., TIM E. BENTSEN, BRIAN M. DAVIS, JAMES M. DECOSMO, PAUL S. FISHER, MARY E. MCBRIDE, and DOUGLAS D. RUBENSTEIN, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Stephen Bushansky ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE AND SUMMARY OF THE ACTION

1.      This is an action brought by Plaintiff against CatchMark Timber Trust, Inc. ("CatchMark" or the "Company") and the members of its Board of Directors

(the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which CatchMark will be acquired by PotlatchDeltic Corporation ("PotlatchDeltic") through PotlatchDeltic's subsidiary Horizon Merger Sub 2022, LLC ("Merger Sub") (the "Proposed Transaction").

2.      On May 31, 2022, CatchMark and PotlatchDeltic issued a joint press release announcing they had entered into an Agreement and Plan of Merger, dated May 29, 2022 (the "Merger Agreement"), to sell CatchMark to PotlatchDeltic. Under the terms of the Merger Agreement, each CatchMark stockholder will receive 0.23 shares of PotlatchDeltic common stock for each share of CatchMark common stock they own (the "Merger Consideration").  Upon completion of the merger, it is expected that PotlatchDeltic stockholders will own approximately 86% of the combined company, and CatchMark stockholders will own approximately 14%. The Proposed Transaction is valued at approximately $919 million.

3.      On July 11, 2022, PotlatchDeltic filed a Form S-4 Registration Statement (as amended on August 8, 2022, the "Registration Statement") with the SEC.  The Registration Statement, which recommends that CatchMark stockholders

vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the financial projections of CatchMark management and PotlatchDeltic management; and (ii) the data and inputs underlying the valuation analyses performed by the Company's financial advisor, Stifel, Nicolaus & Company, Incorporated ("Stifel"). Defendants authorized the issuance of the false and misleading Registration Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      In short, unless remedied, CatchMark's public stockholders will be irreparably harmed because the Registration Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant

is either a corporation that conducts business in and maintains operations within this District or is an individual with sufficient minimum contacts with this District to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.  Defendant CatchMark is headquartered in this district, rendering venue in this district appropriate.

## THE PARTIES

8.     Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of CatchMark.

9.     Defendant CatchMark is a Maryland corporation, with its principal executive offices located at 5 Concourse Parkway, Suite 2650, Atlanta, Georgia 30328.  The Company invests in prime timberlands located in the nation's leading mill markets.  CatchMark's common stock trades on the New York Stock Exchange under the ticker symbol "CTT."

10.    Defendant Tim E. Bentsen ("Bentsen") has been a director of the Company since April 2020.

11.    Defendant Brian M. Davis ("Davis") has been President of the Company since April 2019, and Chief Executive Officer ("CEO") and a director of the Company since January 2020.  Defendant Davis also previously served as Chief Financial Officer ("CFO") of the Company from March 2013 until January 2020.

12.    Defendant James M. DeCosmo ("DeCosmo") has been a director of the Company since April 2020.

13.    Defendant Paul S. Fisher ("Fisher") has been a director of the Company since January 2016.

14.    Defendant Mary E. McBride ("McBride") has been a director of the Company since February 2018.

15.    Defendant Douglas D. Rubenstein ("Rubenstein") has been Chairman of the Board since June 2020 and a director of the Company since December 2013.

16.    Defendants identified in paragraphs 10-15 are referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

17.    PotlatchDeltic is a leading timberland REIT with operations in seven states where it owns approximately 1.8 million acres of timberland.  PotlatchDeltic

also owns six sawmills and an industrial grade plywood mill, a residential and commercial real estate development business, and a rural timberland sales program. In 2021, PotlatchDeltic generated approximately $1.337 billion in revenue and as of December 31, 2021, had 1,299 employees.

18.    CatchMark Timber Operating Partnership, L.P. (the "Partnership") is CatchMark's operating partnership, of which the Company is the sole general partner.  All CatchMark's current and future business is conducted through the partnership.

19.    Merger Sub is a Delaware limited liability company and a wholly owned subsidiary of PotlatchDeltic.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

20.    CatchMark owns and operates timberlands located in the United States and has elected to be taxed as a REIT for federal income tax purposes.  CatchMark acquires, owns, operates, manages, and disposes of timberland properties directly, through wholly owned subsidiaries, or through joint ventures.  Operationally, the Company focuses on generating cash flows from sustainable harvests and improved harvest mix on high-quality industrial timberlands, as well as opportunistic land sales, rent from hunting and recreational leases, and asset management fees to

provide recurring dividends to our stockholders.  CatchMark practices intensive forest management and silvicultural techniques that improve the biological growth of Company owned forests.  The Company also seeks to create additional value from economic realization of environmental initiatives, including carbon sequestration, wetlands mitigation banking, and solar projects, recognizing the key role that forests play in protecting the environment.

21.    CatchMark has three reportable segments: Harvest, Real Estate and Investment Management.  The Harvest segment includes wholly owned timber assets and associated timber sales, other revenues and related expenses.  The Real Estate segment includes timberland sales, cost of timberland sales and large dispositions.  The Investment Management segment includes investments in and income/loss from unconsolidated joint ventures and asset management fee revenues earned for the management of these joint ventures.

22.    On May 5, 2022, the Company announced its first quarter 2022 financial results.  Net income for the quarter was $3.2 million, versus a $0.6 million loss during the prior year period.  Adjusted EBITDA improved to $14.8 million, up from $12.9 million in the first quarter of 2021.  CatchMark also declared a cash dividend of $0.075 per share for its common stockholders of record as of May 31, 2022, payable on June 15, 2022.  Reflecting on the Company's results and looking

to the future, defendant Davis stated:

> First quarter results again demonstrated how CatchMark's prime timberlands located in select leading U.S. South mill markets continue to deliver superior pricing for our harvests well above market averages while also registering significant year-over-year growth.  For the full year, we expect to achieve sawtimber pricing of approximately 20% over 2021 as demand for new housing remains strong even in a higher interest rate environment.  Retail land sales also contributed to our strong quarterly results, capturing excellent pricing for acreage with stocking and productivity characteristics below our portfolio averages. At the same time, our small-tract acquisition program has gained traction, benefiting from our improved balance sheet and strong liquidity position, and focusing on markets where our local presence gives us an advantage in finding good value.

## The Proposed Transaction

23.    On May 31, 2022, CatchMark and PotlatchDeltic issued a joint press release announcing the Proposed Transaction, which states, in relevant part:

> SPOKANE, Wash., ATLANTA, Ga. May 31, 2022 (BUSINESS WIRE) – PotlatchDeltic Corporation (Nasdaq: PCH) ("PotlatchDeltic") and CatchMark Timber Trust, Inc. (NYSE: CTT) ("CatchMark") today announced that they have entered into a definitive agreement to combine in an all-stock transaction.  The acquisition by PotlatchDeltic will strengthen and diversify a leading integrated timber REIT and continue to enhance shareholder value.
>
> Based on the closing stock prices of PotlatchDeltic and CatchMark on May 27, 2022, the combined company is expected to have a pro forma market capitalization over $4 billion and total enterprise value of more than $5 billion, including $557 million in net debt.
>
> Under the terms of the agreement, which has been unanimously approved by the Board of Directors of both companies, CatchMark stockholders will receive 0.23 common shares of PotlatchDeltic stock

for each common share of CatchMark that they own. This reflects a price per share of $12.88 for each common share of CatchMark, and a 55% premium to CatchMark's common share price as of the close of business on May 27, 2022. Following close of the transaction, PotlatchDeltic stockholders will own approximately 86% of the combined company, and CatchMark stockholders will own approximately 14% on a fully diluted basis.

The combination brings together two high quality timberland REITs resulting in PotlatchDeltic owning approximately 2.2 million acres of diversified timberlands including 626,000 acres in Idaho and over 1.5 million acres in strengthening markets in the U.S. South. PotlatchDeltic also remains the timber REIT with the most leverage to lumber prices, including 1.1 billion board feet of lumber capacity. The transaction also combines two successful and complementary real estate businesses.

Eric J. Cremers, President and Chief Executive Officer of PotlatchDeltic, said, "We are excited about growing shareholder value by combining PotlatchDeltic and CatchMark. With CatchMark, we gain significant scale in three states and diversify our timberland holdings into some of the strongest markets in the U.S. South. In addition, the location of CatchMark's land near large population centers provides attractive rural real estate sales opportunities. PotlatchDeltic will retain a strong balance sheet and liquidity after the merger is completed, providing a platform for continued growth. We also remain committed to responsible environmental, social, and governance strategies."

Brian M. Davis, President and Chief Executive Officer of CatchMark, said, "This partnership with PotlatchDeltic unlocks value for our stockholders and positions us well for sustainable success over the long term. By joining together our high quality assets and our dedicated and talented employees, we will greatly enhance the potential of PotlatchDeltic. We look forward to working together as we integrate our two companies and capitalize on the robust opportunities for growth and success."

PotlatchDeltic and CatchMark: Leveraging Two Great Timber REITs

The combination offers significant strategic and financial opportunities beyond what could be achieved by either company on a standalone basis, notably through:

**Complementary Timberland Portfolios**.  The combination will result in geographic diversity and scale, increasing PotlatchDeltic's U.S. South ownership to over 1.5 million acres of timberland in six states. The transaction adds approximately 350,000 acres of superior site index timberlands in Alabama, South Carolina, and Georgia.  CatchMark's timberlands are in some of the strongest markets in the U.S. South with a deep base of well capitalized customers.   PotlatchDeltic and CatchMark share a dedication to continue managing timberlands sustainably using best management practices and third-party certification.

**HBU Real Estate Opportunities**.  The combination will result in a diverse real estate portfolio with CatchMark's timberlands located close to large population centers.  PotlatchDeltic will leverage its rural land sales expertise and strategy, along with CatchMark's local market knowledge, to maximize rural real estate sales opportunities.  These opportunities include potential conservation and solar transactions.

**Compelling Synergies and Accretive to CAD**.  Cash Available for Distribution ("CAD") annual synergies are estimated to be $16 million, reflecting reduced overhead and the elimination of public company expenses, insourcing timberland management and reducing interest expense by refinancing CatchMark's debt.  PotlatchDeltic expects the run rate synergies to be achieved by the end of the first full year after the merger closes. PotlatchDeltic expects the transaction will be accretive to Cash Available for Distribution ("CAD") per share in the first full year, excluding costs to achieve synergies and assuming the full synergies run rate.

**Meaningful Increase in Stable Cash Flows**.  EBITDDA contributed by CatchMark is expected to average $55 million annually over the first five years, assuming full synergies run rate.

**Growing Shareholder Value Through Balanced Capital Allocation**. A strong balance sheet, with pro forma combined Debt to Enterprise Value of approximately 10% will enable PotlatchDeltic to remain flexible and take advantage of other capital allocation opportunities. The addition of CatchMark's cash flows and CAD synergies provide strong coverage for PotlatchDeltic's attractive and growing dividend.

**Board Composition and Headquarters**

The Board of Directors of the combined company will consist of nine Directors from PotlatchDeltic and one Director from CatchMark. The corporate headquarters will be maintained in Spokane, Washington. A regional office will be maintained in Atlanta, Georgia.

**Timing and Approvals**

The transaction is expected to close in the second half of 2022. The transaction requires approval of stockholders of CatchMark and is subject to the satisfaction of customary closing conditions and regulatory approvals. Due to the transaction, CatchMark has postponed the 2022 annual meeting of its stockholders that had been scheduled for June 14, 2022.

**Advisors**

BofA Securities, Inc. is serving as exclusive financial advisor and Perkins Coie LLP is serving as legal advisor to PotlatchDeltic. Stifel, Nicolaus & Company, Inc. is serving as exclusive financial advisor and King & Spalding LLP is serving as legal advisor to CatchMark.

**Insiders' Interests in the Proposed Transaction**

24. CatchMark insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public

stockholders of CatchMark.

25.   Notably, if they are terminated in connection with the Proposed Transaction, CatchMark's named executive officers stand to receive substantial cash severance payments in the form of Golden Parachute compensation, as set forth in the following table:

| Name | Cash[1] $ | Equity[2] $ | Perquisites/ Benefits[3] $ | Tax Reimbursement[4] $ | Other $ | Total $ |
|---|---|---|---|---|---|---|
| Brian Davis | 3,182,702 | 5,870,211 | 52,294 | 3,739,639 | N/A | 12,844,846 |
| Ursula Godoy-Arbelaez | 897,000 | 2,300,730 | 10,598 | 1,254,417 | N/A | 4,462,745 |
| Todd Reitz | | | | | | |
| | 1,133,406 | 3,242,127 | — | 1,919,564 | | 6,295,097 |
| Lesley Solomon | 841,554 | 2,854,419 | 19,399 | 1,710,439 | N/A | 5,425,811 |

## The Registration Statement Contains Material Misstatements or Omissions

26.   The defendants filed a materially incomplete and misleading Registration Statement with the SEC and disseminated it to CatchMark's stockholders.   The Registration Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

27.   Specifically, as set forth below, the Registration Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the financial projections of CatchMark management and PotlatchDeltic management; and (ii) the data and inputs underlying the valuation analyses performed by the Company's financial

advisor, Stifel.

*Material Omissions Concerning CatchMark Management's and PotlatchDeltic Management's Financial Projections*

28.     The Registration Statement omits material information regarding Company management's and PotlatchDeltic management's financial projections.

29.     Specifically, with respect to each of CatchMark management's and PotlatchDeltic management's respective financial projections, the Registration Statement fails to disclose: (i) the quantification of the projected unlevered free cash flows ("UFCFs") for the calendar years ending December 31, 2022, through December 31, 2026; (ii) the line items underlying the projected unlevered free cash flows; (iii) the estimated net asset value ("NAV") per share of CatchMark common stock at the end of 2026, under each of the Upside Case, Neutral Case, and Downside Case; and (iv) the aggregate amount of dividends per share of CatchMark common stock on a quarterly basis for the period from April 1, 2022 through December 31, 2026.

30.     The omission of this information renders the statements in the "Certain PotlatchDeltic Unaudited Prospective Financial Information" and "Certain CatchMark Unaudited Prospective Financial Information" sections of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Stifel's Financial Analyses***

31.    Additionally, the Registration Statement describes Stifel's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Stifel's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, CatchMark's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Stifel's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

32.    With respect to Stifel's *Dividend Discount Analysis*, the Registration Statement fails to disclose (i) quantification of the amount of dividends per share of CatchMark common stock on a quarterly basis for the period from April 1, 2022 through December 31, 2026; (ii) quantification of the estimated net asset value ("NAV") per share of CatchMark common stock at the end of 2026, in each case, under each of the Upside Case, Neutral Case, and Downside Case; and (iii) quantification of the inputs and assumptions underlying the discount rate range of 9.14% to 12.16%.

33.    With respect to Stifel's *Selected Comparable Company Analysis*, the Registration Statement fails to disclose the CY2022E Timberland EBITDA for

CatchMark under each of the Upside Case, Neutral Case, and Downside Case.

34. With respect to Stifel's *Gross Timberlands Analysis*, the Registration Statement fails to disclose: (i) quantification of the unlevered free cash flow ("FCF") from CatchMark's Timberland business; (ii) quantification of the terminal value; (iii) quantification of the inputs and assumptions underlying the discount rate range of 5.0% to 6.5% applied to the Company's free cash flows and terminal value; and (ii) quantification of Catchmark's net debt utilized in the analysis.

35. With respect to Stifel's *Discounted Cash Flow Analysis (PotlatchDeltic Financial Analyses)*, the Registration Statement fails to disclose: (i) quantification of PotlatchDeltic's unlevered free cash flows underlying the analysis; (ii) quantification of the inputs and assumptions underlying the discount rate range of 7.64% to 9.64%; (iii) quantification of PotlatchDeltic's net debt utilized in the analysis; (iv) the number of shares of PotlatchDeltic stock outstanding used to calculate the range of implied present values per share.

36. With respect to Stifel's *Comparable Companies Analysis (PotlatchDeltic Financial Analyses)*, the Registration Statement fails to disclose the individual multiples and financial metrics observed for each of the Timber peer-selected companies and Wood Products peer-selected companies analyzed by Stifel.

37. The omission of this information renders the statements in the "Opinion

of CatchMark's Financial Advisor" section of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

## CLAIMS FOR RELIEF

### COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

38.     Plaintiff repeats all previous allegations as if set forth in full.

39.     During the relevant period, defendants disseminated the false and misleading Registration Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

40.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Registration Statement.  The Registration Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about CatchMark management's financial projections and PotlatchDeltic management's financial projections, and the data and inputs underlying the valuation analyses performed by the Company's financial

advisor, Stifel.   The defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

41.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

42.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

43.     Because of the false and misleading statements in the Registration Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.   Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## <u>COUNT II</u>

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

44.     Plaintiff repeats all previous allegations as if set forth in full.

45.     The Individual Defendants acted as controlling persons of CatchMark within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of CatchMark, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had

the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

46.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

47.     Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the transactions giving rise to the securities violations as alleged herein and exercised the same.   The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.   They were, thus, directly involved in the making of the Registration Statement.

48.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.   The Registration Statement

purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

49.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

50.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, CatchMark's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of CatchMark, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to CatchMark stockholders;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: August 9, 2022                    **WEISS LAW**

                                         /s/ Michael A. Rogovin
                                         Michael A. Rogovin
                                         Georgia Bar No. 780075
                                         476 Hardendorf Ave. NE
                                         Atlanta, GA 30307
                                         Tel.: (404) 692-7910
                                         Fax: (212) 682-3010
                                         mrogovin@weisslawllp.com

                                         *Attorneys for Plaintiff*